**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**YOLLINNETTE Y. SANCHEZ AND
OTHERS SIMILARLY SITUATED,**

                   **Plaintiffs,**

**-vs-**                                                 **Case No. 6:06-cv-1811-Orl-28DAB**

**OCWEN LOAN SERVICING, LLC, BILL
ERBY, RON FERRIS,**

                   **Defendants.**
_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:** **MOTION FOR AWARD OF ATTORNEY'S FEES (Doc. No. 283)**
>
> **FILED:** November 14, 2008
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED** in part.

As the Court has explained in a previous Report and Recommendation (Doc. No. 277), Plaintiffs were employed as Loan Resolution Consultants or Asset Managers by Ocwen for varying periods of time. The extent of Plaintiffs' entitlement to overtime was much disputed by both sides, with Ocwen characterizing Plaintiffs as "exempt" bona fide administrative employees based on a 2001 Department of Labor letter ruling. Ocwen filed a motion for summary judgment (Doc. No. 238), which was denied. Doc. Nos. 264, 267. Ocwen then served Plaintiffs with offers of judgment which

were accepted by the fifty Plaintiffs in the collective action. This Court recommended acceptance of those amounts as fair and reasonable resolutions[1] of Plaintiffs' total FLSA claims in the amount of $213,155.78 (*see* Doc. No. 277 – chart detailing offers), and Judge Antoon adopted the Report and Recommendation on November 4, 2008. Doc. No. 279.

Plaintiffs now seek[2] an award of attorney's fees against Defendant Ocwen for $87,568.50and an award of costs of $804.50. Doc. No. 283. Ocwen is opposed to the size of the attorney's fee award, arguing that $44,903.50 is more appropriate based on Ocwen's arguments that certain time entries and the overall hourly rates should be reduced; Ocwen also opposes reimbursement of the cost of two depositions. Based on a full review of the record and the exhibits submitted by the parties, the Court recommends a fee award of **$81,750.00** and a cost award of **$805.00** be awarded to Plaintiffs.

## I. Attorney's Fees

It is the general rule in this country that, unless Congress provides otherwise, parties are to bear their own attorney's fees. *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 533 (1994) (citing *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975) (tracing the origins and development of the American Rule)). Plaintiffs in FLSA cases are entitled to an award of fees in addition to any judgment awarded. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). A fee award is mandatory for prevailing plaintiffs under § 216(b) of the FLSA.

---

[1] *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982) ("When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.").

[2] In response to Plaintiff's original Motion for Attorney's Fees (Doc. No. 278), Ocwen filed a brief highlighting certain inconsistencies in Plaintiff's submissions which appeared to be at least partially typographical errors; in addition, the Court noted the sparseness of some work descriptions. Doc. No. 282. Plaintiff was ordered to file an amended motion for attorney's fees and costs with clarification of the descriptions. Doc. No. 282.

*Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1542 (11th Cir. 1985) ("Section 216(b) of the Act makes fee awards mandatory for prevailing plaintiffs.").

The fee applicant bears the burden of "establishing entitlement and documenting the appropriate hours and hourly rates." *Norman v. Housing Authority of City of Montgomery,* 836 F.2d 1292, 1303 (11th Cir. 1988). This burden includes supplying the court with specific and detailed evidence from which it can determine the reasonable hourly rate; maintaining records to show the time spent on the different claims; and setting out with sufficient particularity the general subject matter of the time expenditures so that the district court can assess the time claimed for each activity. *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999). "A well-prepared fee petition also would include a summary, grouping time entries by the nature of the activity or state of the case." *Id*. While the District Court may benefit from evidence of prevailing views among practitioners on the reasonableness of such fees, generalized statements that time spent was reasonable or unreasonable are not particularly helpful and are not entitled to much weight. *Norman*, 836 F.3d at 1301. Proof from fee opponents should be precise. *Id*. at 1303.

In formulating a fee that is reasonable, federal courts employ the familiar lodestar approach. *See Nick-O-Val Music Co., Inc. v. P.O.S. Radio, Inc.*, 656 F. Supp. 826 (M.D. Fla. 1987) (awarding fees in copyright case using the lodestar). "The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (per curiam); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Factors to be considered when setting a fee include: 1) the time and labor required; 2) the novelty and difficulty of the issues; 3) the skill required to perform the legal services properly; 4) preclusion of other employment; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or circumstances; 8) the amount involved and the results

obtained; 9) the experience, reputation and ability of the attorneys; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds, Blanchard v. Bergeron*, 489 U.S. 87 (1989); *see Cable/Home Communication Corp. v. Network Production*, 902 F.2d 829, 853 n.37 (11th Cir. 1990).

Although the district court must examine each of the *Johnson* factors, it is not obligated to adjust a fee upward or downward in every instance where one or another of the factors is found to be present. *Marion v. Barrier*, 694 F.2d 229, 231 (11th Cir. 1982). Rather, *Johnson* suggests a balancing process, with the trial judge remaining responsible for the discretionary functions of assessing the weight to be given to each factor and the appropriate adjustments to make in the fee. *Id.*

In cases in which the documentation is inadequate, the "district court is not relieved of its obligation to award a reasonable fee, but the district court traditionally has had the power to make such an award without the need of further pleadings or an evidentiary hearing." *Norman*, 836 F.2d at 1303. Because the Court is itself an expert on attorney's fees, it may consider its own knowledge and experience and award attorney's fees based solely on affidavits in the record. *Id.* Excessive, redundant, and unnecessary hours should be excluded from a fee award. *Id.* at 1301 (quoting *Hensley*, 461 U.S. at 434). The Supreme Court requires fee applicants to exercise billing judgment which means that the applicant should "exclude from his fee applications 'excessive, redundant, or otherwise unnecessary [hours],' which are hours that would be "unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." *Norman*, 836 F.3d at 1301; *ACLU v. Barnes*, 168 F.3d at 428 (quoting *Hensley*, 461 U.S. at 434). Excluding excessive hours means that a lawyer may not be compensated for activities which would not be billed to a client

intent on vindicating its rights. *Id.* Exclusions for excessive hours are ultimately left to the discretion of the District Court. *Id.* The Court now turns to the calculation of a reasonable fee.

*A. Reasonable Hourly Rate*

Plaintiffs seek reimbursement at a $300 hourly rate for Mr. Pantas' work and at $105 for the work of paralegal Jon Rankin. Mr. Pantas has been a member of the Florida bar since 1993, and practicing extensively in the area of employment law since 2000, with more than eleven years of litigation experience. Doc. No. 283-3 at 1. Mr. Pantas attests that paralegal Jon Rankin has eight years of experience at the trial and appellate levels of litigation with strong research and writing skills, equivalent to a law clerk rather than a paralegal. Doc. No. 283-3 at 2.

A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation. *Gaines v. Dougherty County Board of Education*, 775 F.2d 1565, 1571 (11th Cir. 1985). The reasonableness of the rate charged is determined by its congruity with "those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson,* 465 U.S. 886, 896 n.11 (1984). In fact, the going rate in the community is the most critical factor in setting the fee rate. *Martin v. University of South Alabama*, 911 F.2d 604, 610 (11th Cir. 1990); *see Cruz v. Local Union No. 3 of Intern. Broth. of Elec. Workers,* 34 F.3d 1148 (2d Cir. 1994) (prevailing community that court should use in setting the lodestar is the district in which the court sits).

An applicant may meet this burden to show the reasonable rate by producing either direct evidence of rates charged under similar circumstances, or opinion evidence of reasonable rates. *Norman,* 836 F.2d at 1299. The court may also use its own expertise and judgment to make an appropriate independent assessment of the value of an attorney's services. *Id.* at 1303; *American Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas County,* 278 F. Supp. 2d 1301,

1310 (M.D. Fla. 2003); *Scelta v. Delicatessen Support Services,* 203 F. Supp. 2d 1328, 1331 (M.D. Fla. 2002). In exercising its discretion, this Court must consider "the prevailing marketplace rates for the type of work and the experience of the attorneys." *Cabrera v. Jakabovitz,* 24 F.3d 372, 392 (2d Cir. 1994). Services of paralegals and law clerks are also compensable at market rates. *Missouri v. Jenkins by Agyei,* 491 U.S. 274, 288-89 (1989); *Duckworth v. Whisenant*, 97 F.3d 1393 (11th Cir. 1996); *American Charities,* 278 F.Supp.2d at 1310.

Ocwen does challenge Mr. Pantas's $300 hourly rate inasmuch as Ocwen argues that the work he did "in this case demonstrates that it was primarily reviewing documents and calculating alleged damages, which do not require the legal skills that might command a $300.00 hourly rate." Doc. No. 285. Ocwen argues that the hourly rate should be reduced to $250.00 for *all* attorney hours "to reflect the nature of the work performed." Ocwen cites as specific examples, entries showing that Mr. Pantas spent 161.3 total hours[3] to "review and analyze Verified Summary and prepare damage calculation" for each of the 39 plaintiffs; 3.9 hours[4] to "review and finalize letter enclosing Offer of Judgment" to each plaintiff; and 15.6 hours to "review and approve for filing" the plaintiffs' answers to the Court's interrogatories. The Court does not agree that these particular entries are excessive or reflect work that could have been accomplished as simple "mathematical calculations" as Ocwen argues, however, based on a review of the attorney hours as a whole, it appears that there were some tasks that did not require partner-level skill and experience. For example, some of the time spent evaluating the more routine filings or Verified Summaries could have been performed by an attorney with associate level experience; other more complex Verified Summaries required a more experienced eye. The Court will reduce 20% of the total attorney-hours to $200 per hour, the hourly rate awarded to senior

---

[3]Plaintiffs contend that amount of time is 138.7 hours reviewing and analyzing Defendant's Verified Summaries and preparing damage calculations. Doc. No. 283 at 5.

[4]This time entry was reduced from the 11.70 hours initially sought in Plaintiffs' first application. *See* Doc. No. 283 at 4-5.

associates. Ocwen does not challenge the $105 hourly rate for paralegal Jon Rankin and the Court will award this rate as reasonable.

A $300 hourly rate for senior partner work, $200 for associate work, and $105 for paralegal work are rates which are the Court has previously held are reasonable for work performed by Konstantine E. Pantas, Esq. *See Ochoa v. Alie Bros., Inc.*, Case No. 6:06-cv-609-Orl-DAB, 2007 WL 3334332 (M.D. Fla. Nov. 8, 2007); *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, Case No.6:05-cv-269-Orl-28JGG, 2007 WL 842771 (M.D. Fla. Mar. 20, 2007). The rates are also in line with reasonable rates awarded in this Court for work accomplished by Orlando attorneys in business litigation matters. *See Optowave v. Nikitin*, Case No. 6:05-cv-1083-Orl-22DAB, 2008 WL 5501066 (M.D. Fla. Nov. 21, 2008) (awarding reasonable hourly rates of $325 for senior partner with 35 years of experience, $175 for 6th year associate, and $90 per hour for paralegal work); *Securities and Exchange Commission v. Digges*, Case No. 6:06-cv-137-Orl-31DAB (awarding receiver and senior litigator compensation at $325-300/hour, senior associate rate of $175/hour, and paralegal rate of $90-95/hour); *Corwin v. Walt Disney World Co.*, Case No. 6:05-cv-1083-Orl-19DAB (awarding twenty-three year attorney rate of $300/hour, senior associate $200/hour, and paralegals a rate of $90/hour).

*B. Reasonable Hours*

Plaintiffs seek reimbursement for 284.3 hours of attorney time (and an unchallenged 21.7 hours of paralegal time). Ocwen argues that the total hours should be reduced to 170.5 hours because documentation provided by Plaintiffs demonstrates that the claimed hours worked by Mr. Pantas are not supported by the evidence or were not reasonable.

Ocwen argues specifically that 15.9 hours spent by Mr. Pantas on September 16, 2008 was excessive and unnecessary; the time was spent preparing drafts of a pretrial stipulation, witness and exhibit lists, jury instructions, and a verdict form, and going through the case file and reviewing

documents provided by Defendant. Ocwen contends that the time was unnecessarily spent because the parties were discussing settling the claims of the three remaining plaintiffs, the attorney's pretrial meeting was not scheduled until September 18, and the documents were not due to be filed with the Court until October 1. Doc. No. 285. Ocwen's also insinuates that the time is suspect because its counsel never received drafts of the pretrial documents[5], and Plaintiffs did not provide copies in support of the claimed hours expended.

Ocwen challenges a total of 11.6 hours spent by Mr. Pantas on September 15 and 16, 2008[6] to "go through case files and review documents," and "identify all potential trial exhibits" as too vague to support an award for 11.6 hours, particularly because only three Plaintiffs' claims remained in the case at that time; Ocwen argues the time should be reduced to no more than 3.3 hours.

Ocwen also recommends that "[s]hould Plaintiffs continue to claim recovery for 15.9 hours in a single day [on September 16, 2008] for the preparation of the pretrial documents, Mr. Pantas should be required to provide drafts, as well as copies of all other hours that he billed that day, so that the Court may fairly evaluate the reasonableness of the claimed expenditure of hours"; otherwise, the 15.9 hours should be excluded from the lodestar calculation. Doc. No. 285 at 5.

First of all, as the Supreme Court has stated, a request for attorney's fees should not result in a second major litigation, and that **ideally the litigants will settle the amount of the fee**. *Hensley*

---

[5] Ocwen also challenges Mr. Pantas's statement that no drafts of the pretrial statement exhibits were provided because they might reveal his strategies relative to another identical action that he is about to file against Ocwen's West Palm Beach facility because the issues should be the same as in an identical action he had already filed against Ocwen's West Palm Beach facility in August 2007, which was dismissed with prejudice on March 13, 2008. Doc. No. 285. No information on this case is provided, and the Court does not consider this argument. Mr. Pantas explains that he told his assistant not to send a draft of his proposed pretrial statement because the parties were still negotiating the settlement until late on the day before the meeting. Doc. No. 283 at 4.

[6] Ocwen also implies there is something improper with Mr. Pantas's revision to his time records, after they were originally filed, where he added: "Review remaining Plaintiffs' employment records and employment records pertaining to witnesses to be called during trial" to the activity description for September 15, 2008. Doc. No. 285 at 5-6. The fact the entry was amended is of no significance since the Court *ordered* Mr. Pantas to file an amended motion for fees with "corrected amounts and entries in the submission." Doc. No. 282.

*v. Eckerhart*, 461 U.S. 434, 437 (1983) (emphasis added); *accord Thompson v. Pharmacy Corp. of America, Inc.*, 334 F.3d 1242, 1245 (11th Cir. 2003) (Lawyers should not be compensated for turning the litigation about attorney's fees into a "second major litigation."). Justices Brennan, Marshall, Blackmun, and Stevens characterized post-judgment litigation over attorneys fees and related appeals as "one of the least socially productive types of litigation imaginable." *Hensley*, 461 U.S. at 442 (concurring in part and dissenting in part); *Association for Disabled Americans, Inc. v. Integra Resort Management, Inc.*, 385 F.Supp. 2d 1272, 1286 (M.D. Fla. 2005).

This admonition to avoid protracted litigation over fees was partially the reason the Court ordered rebriefing on the matter with a "good faith" conference in an "effort to reach a resolution" (Doc. No. 282 at 2), in the hope that the parties could come to a full compromise or at least narrow the issues. With the exception of time and hourly rate for the paralegal Mr. Rankin, no such accord has been reached. Moreover, Ocwen now argues that the Court should order *further* discovery of Mr. Pantas's efforts to prepare for the final pretrial conference, which is out of the question.

Second, in this case there was extensive motions practice in this case, with Ocwen filing a Motion for Summary Judgment and for Rule 11 Sanctions, on which it did not prevail (*see* Doc. Nos. 264, 267), and Motions to Dismiss numerous Plaintiffs, which were unopposed by Plaintiffs' counsel and were granted. *See* Doc. No. 248, 256, 263. The case progressed through a full discovery schedule with depositions and two rounds of paper discovery (FLSA-Court interrogatories and Fed. R. Civ. P.). In addition, the parties participated in a mediation before a court-approved mediator. Doc. No. 259. The parties were required to file the Final Pretrial Statement on October 1, 2008. *See* Doc. No. 227. The case was not fully settled until September 17, 2008, which was literally on the eve of the date set for counsel to meet to prepare the joint final pretrial statement on September 18, 2008. Mr. Pantas was necessarily required to prepare Plaintiffs' portion of the pretrial statement, jury instructions,

witness and exhibit lists, verdict form, etc. As Mr. Pantas explains, Ocwen did not provide an offer to settle the remaining Plaintiffs' claims until 7:20 p.m. on September 16, 2008, and the case did not completely settle until 4:30 p.m. on September 17, 2008. *See* Doc. No. 283 at 3. The meeting to prepare the required Joint Final Pretrial Statement was scheduled for 10:00 a.m. on September 18, 2008; thus he was preparing until virtually the last minute in the event the final claims did not settle.

Moreover, as Mr. Pantas explains, even though there were only three remaining Plaintiffs, this did not diminish the amount of work necessary to prepare for trial, which was equivalent to preparing for three separate trials. Plaintiffs anticipated calling several witnesses that worked at the Defendant's offices and several of the Plaintiffs that accepted Defendant's Offers of Judgment to refute Ocwen's good faith defense; this required the undersigned to review all of the documents in his possession (four bankers-boxes worth) that related to those witnesses as well as the three remaining Plaintiffs. The Court finds that all of the time Mr. Pantas spent reviewing documents, and preparing for the meeting to construct the Joint Final Pretrial Statement was necessary and is fully compensable. The timing of Ocwen's final three offers of judgment were within Ocwen's control and Plaintiffs' preparation for the meeting to finalize the joint pretrial statement and ultimately for trial was necessary and reasonable.

Ocwen also contends that Mr. Pantas's 3.9 hours spent "reviewing the same form letter to each of 39 plaintiffs," should be reduced as excessive, and it should not have taken six minutes per Plaintiff to compare the number in the offer of judgment with the number in the letter to that Plaintiff. The Court has adjusted for the economies of scale in reviewing the 39 similar form letters by the reducing Mr. Pantas's hourly rate to the associate level work for 20% of his hours.

Ocwen lists a series of complaints about time spent by Mr. Pantas doing duplicative work on form discovery requests, and reviewing answers to the Court interrogatories for too many – what it

argues should be 39 instead of 52 Plaintiffs. Ocwen points to entries for March 31-April 1, 2008, where Mr. Pantas indicated that he spent 4.5 hours to review what Ocwen characterizes as "the exact same form discovery requests sent to each plaintiff." Ocwen argues that a reasonable number of hours to confirm that the discovery requests were identical and what objections should be posed should not have exceeded two hours[7]. Ocwen also argues that Mr. Pantas claimed that he spent .3 hours each to "review and approve for filing" the plaintiffs' answers to the Court's interrogatories, for a total of 15.6 hours. Ocwen contends that the Court's interrogatories were simple and straightforward, and the answers should not have required only 7.8 hours to review; and Mr. Pantas submitted 52 different entries for this activity, even though, according to Ocwen, only 39 Plaintiffs accepted offers of judgment.

Ocwen is clearly wrong on the number of Plaintiffs who accepted offers of judgment, which is fifty, not thirty-nine. According to the offers of judgment submitted to the Court, which were accepted by Judge Antoon as "fair and reasonable," *fifty* Plaintiffs accepted offers of judgment totaling $213,155.78. *See* Doc. No. 277 at 3-4 (listing 50 Plaintiffs in chart). The court finds 15.6 hours for reviewing fifty of the Plaintiffs' responses to Court interrogatories and 4.5 hours for reviewing discovery requests for each of 50 Plaintiffs to be a reasonable amount of time spent, particularly where there was great variation in the Plaintiffs length of employment with Ocwen and some variation in salaries for about a third of the Plaintiffs.

Finally, Ocwen argues that Mr. Pantas's total of 161.3 hours across several dates[8] to "review and analyze Verified Summaries and prepare damage calculations" is excessive because the descriptions lack explanation and documentation. Doc. No. 285. Ocwen contends Mr. Pantas spent

---

[7] A "second litigation" should not arise for a dispute over **2.5** hours.

[8] January 27, 2007; April 13-14, 2007; June 11, 2007; June 30-August 18, 2007; November 24-December 3, 2007; and April 19, 2008.

too much time "doing mathematical calculations which could have been done in a fraction of that time using Excel or other computer program" and the hours claimed should be reduced by at least half, or by 80.7 hours.

Plaintiffs first contend that the figure is 138.7 hours, not 161.3, and that Ocwen is just trying to minimize the number of Plaintiffs in the case and the amount of work necessary to properly prosecute it. Doc. No. 283 at 5. The Court agrees that Ocwen's attempts to minimize the number of Plaintiffs involved in the litigation or served with offers of judgment are misguided. As the Court stated above, the actual number of Plaintiffs receiving offers of judgment was *fifty*, not thirty-nine - the number Ocwen continues to insist on using. In addition, Mr. Pantas explains that he has applied billing judgment in "diligently attempt[ing] to remove any work he performed in prosecuting the claims of those Plaintiffs that opted into this case, but were later dismissed. Prior to redacting his time records, [Mr. Pantas] had in excess of $140,000.00 in time in this case. Rather than burden the Court with the task of sifting through the time entries and/or fight with Defendant about whether or not any of that time could be claimed as part of the prosecution of the remaining Plaintiffs' claims, the undersigned voluntarily took out those time entries." Doc. No. 283 at 6.

Based on a review of the timesheets by the Court, half of the entries for analyzing the Verified Summaries are for 0.3 of an hour to 2.0 hours, which the Court finds to be reasonable. The remaining entries for the other half of the Plaintiffs are between 2.0 and 5.7 hours for analyzing and comparing Ocwen's stated time and records to Plaintiff's time records, which in other cases might seem excessive, but in this case seems appropriate because of the way the Verified Summaries were provided without any detailed explanation.

In support of the length of time spent, Plaintiffs explain that primary issue in the case was whether or not the Plaintiffs performed work while off the clock and in order to properly calculate

each Plaintiff's respective damages, Mr. Pantas "necessarily had to review each payroll document produced by Ocwen, calculate the amount actually paid to each Plaintiff in each workweek (including bonuses and incentive pay) and prepare a spreadsheet for each Plaintiff utilizing each Plaintiff's individual estimate of the amount of overtime work performed [because] the Plaintiffs claimed varying amounts of overtime." Doc. No. 283 at 6. In addition, each Plaintiff was also paid incentive pay for certain work they performed, thus, counsel had to perform an independent calculation of each Plaintiff's damages on a week-to-week basis. In preparation for mediation and trial, he reviewed each document produced by the Defendant and calculated each Plaintiff's damages.

The Court has reviewed a sampling of Ocwen's Verified Summaries for some of the entries for which Mr. Pantas submitted lengthier time entries, such as those for Frank Lopresti (4.9 hours), Kristie Belford (5.7 hours), Brad Coffey (4.9 hours), and Tara McKenzie (5.10 hours). *See* Doc. No. 283-4 at 11- 14. As a general statement, the Court notes that the "Verified Summaries" lack the detail or source documents that the Court has seen generally filed in other FLSA litigation. Instead, Ocwen filed a summary based on "information available to Ocwen at this time, including schedules, payroll records, and attendance records for the relevant pay periods," but did not provide the supporting records. Instead the Verified Summary listed a typed in notation of the "week of XX" for a given date, and then simply a number between 0 and 48 hours. *See, e.g.,* Doc. No. 131, 143, 150, 173. The Court does not have access to the actual records subsequently produced in discovery by Ocwen, but it is clear that the "listings" in the Verified Summaries lacked detail and necessarily would have required additional effort on the part of Plaintiffs or their counsel to reconstruct three-years worth of "off the clock" hours, not to mention the incentive pay adjustments that Mr. Pantas noted. The Court finds that the hours expended in analyzing the Verified Summaries and calculating damages were necessary and are compensable.

Based on the analysis as set forth above, the Court finds that Plaintiffs should be awarded a reasonable fee of **$81,750** for work performed in connection with the FLSA claims of 50 Plaintiffs which resulted in offers of judgment totaling $213,155.78 (*see* Doc. No. 277). Mr. Pantas's hourly rate should be adjusted to $200/hour for 20% of his hours (56.2 hours) for work that could have been performed at the associate level; and the remainder (227.44 hours) at the partner level of $300/hour; Mr. Rankin's time and rate were unchallenged and Plaintiffs should be awarded $2,278.50 for his time. The adjustments are set forth in the chart below.

|  | **TYPE OF WORK** | **RATES SOUGHT** | **OCWEN RATES** | **RATES AWARDED** | **HOURS SOUGHT** | **HOURS AWARDED** | **TOTAL AMOUNT** |
|---|---|---|---|---|---|---|---|
| Konstantine Pantas, Esq. | Partner work 80% hours | $300.00 | $250.00 | $300.00 | 284.3 | 227.44 | $68,232.00 |
|  | Assoc. work 20% hours |  |  | $200.00 |  | 56.2 | $11,240.00 |
| Jon Rankin | Paralegal | $105.00 | $105.00 | $105.00 | 21.7 | 21.7 | $2,278.50 |
| **TOTALS** |  |  |  |  |  |  | $81,750.00 |

**II. Costs**

Plaintiffs seek to recover $805 in allowable costs for service and filing fees and deposition transcripts; Ocwen is only opposed to reimbursement for the transcripts. Federal Rule of Civil Procedure 54 provides, in pertinent part:

> ***Costs Other Than Attorney's Fees***. Unless a federal statute, these rules, or a court order provides otherwise, costs–other than attorney's fees–should be allowed to the prevailing party.

Rule 54(d)(1), Fed. R. Civ. P.

Although there is a presumption that costs should be awarded to the prevailing party, the presumption is not absolute. *Chapman v. AI Transp*., 229 F.3d 1012, 1038 (11th Cir. 2000) (*en banc*) (the Rule "establishes a presumption that costs are to be awarded to a prevailing party, but vests the

district court with discretion to decide otherwise."); *Head v. Medford,* 62 F.3d 351, 354 (11th Cir. 1995) (noting that district court has discretion to deny a prevailing party costs, but such discretion is not unfettered); *Gilchrist v. Bolger*, 733 F.2d 1551, 1557 (11th Cir. 1984) (if the court exercises its discretion to deny costs to the prevailing party, it must provide its reasons for doing so).

Plaintiffs seek to recover costs for deposition transcripts for $403.50. Costs for a deposition are taxable if the deposition was wholly or partially "necessarily obtained for use in the case." *EEOC v. W&O, Inc.*, 213 F.3d 600, 621 (11th Cir. 2000). "Where the deposition costs were merely incurred for convenience, to aid in thorough preparation, or for purposes of investigation only, the costs are not recoverable." *Id*. at 620.

Ocwen contends that Plaintiffs have not specified which deposition transcripts or why they were specifically needed and the date they were taken, May 22, 2008, was after Ocwen had filed its Motion for Summary Judgment on May 13, 2008 (Doc. No. 238). However, it is not true that the depositions are not identified – an exhibit to the Motion for Attorney's Fees lists costs for the specific transcripts for Kevin Wilcox and Teresa Bratcher. *See* Doc. No. 283-6. Plaintiffs contend that the deposition transcripts were ordered for use in responding to the Motion for Summary Judgment; however, they ultimately were not used because Ocwen had not met its burden of production to be entitled to summary judgment, but Plaintiffs nevertheless needed them to appropriately analyze and respond to Ocwen's assertions in the Motion. Doc. No. 283 at 9. Plaintiffs, following an extension, were not required to respond to Ocwen's Motion for Summary Judgment until June 20, 2008; thus, transcripts ordered on May 22, 2008 were certainly timely for their Response to the Motion. Doc. No. 245. Moreover, Ocwen's Motion for Summary Judgment relied extensively on the affidavit of Kevin Wilcox for its Statement of Undisputed Facts (Doc. No. 238 at 3-4) and there is no question the transcript of the deposition was "necessarily obtained for use" in responding to the summary judgment

motion. Although Plaintiff has not explicitly defined Ms. Bratcher's role at Ocwen, Ocwen has not disputed that she was connected to Plaintiffs' claims and based on the appropriate timing and the modest amount at issue for Ms. Bratcher's fifteen-page deposition ($72.00), the Court will not adjust Plaintiffs' request for costs for her deposition. The Court finds that Plaintiffs' costs should be taxed in the amount sought by Plaintiffs of **$805**.

### *CONCLUSION*

Based on a full review of the record and the exhibits submitted by the parties, it is respectfully **RECOMMENDED** that Plaintiffs be awarded **$81,750.00** for attorney's fees and **$805.00** for costs**.**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on January 27, 2009.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy